Argued and submitted November 26, 1990, affirmed May 1, 1991

# VALLEY EXCAVATING, INC.,
*Respondent,*

*v.*

# Stephen CLARK
## and Rose Clark,
## dba Down to Earth Landscapes,
*Appellants.*

(881811; CA A63266)

810 P2d 869

Daniel N. Gordon, Eugene, argued the cause for appellants. With him on the briefs was Daniel N. Gordon, P.C., Eugene.

Malcolm L. Brand, Salem, argued the cause and filed the brief for respondent.

Before Richardson, Presiding Judge, and Newman and Deits, Judges.

DEITS, J.

**DEITS, J.**

Defendants appeal from a judgment for plaintiff for breach of contract. Defendants contend that the contract between plaintiff and them was a landscape contract and was subject to minimum standards under ORS 671.625 and that, because it did not meet those standards, the trial court erred in denying their motion to dismiss and in entering a judgment for plaintiff on the contract claim. They also argue that their motion to dismiss should have been granted on the ground that the contract was too vague and uncertain to be enforced. We affirm.

Defendants[1] were awarded a contract to do the landscaping work at the Heritage Mall in Albany. Plaintiff reviewed the plans for the project and submitted a bid to do some work on the project for defendants. Defendants accepted the bid, and the parties executed a contract that provided that plaintiff's responsibilities were

> "[t]o load, haul and place existing original pile of on-site topsoil located behind the new Mall building. Existing pile size is estimated at 11,000 yards.

> "We propose hereby to furnish material and labor complete in accordance with the above specifications, for the sum of Thirty-Eight Thousand Five Hundred and 00/100 Dollars ($38,500.00)."

Plaintiff began work on the project and continued for about a week. Its crew used both heavy equipment and hand tools to move the soil into berms and planters at the mall project. When the crew members temporarily ran out of work, they left the site. A dispute then arose between the parties as to when the crew would return to complete the work. Defendants eventually fired plaintiff and hired another company. Plaintiff then brought this action seeking damages for breach of contract.

At the close of plaintiff's case-in-chief, defendants moved to dismiss under ORCP 54B(2) for insufficiency of the evidence. The court denied the motion. After hearing the case, the court held for plaintiff:

---

[1] Defendants Clark were doing business as Down to Earth Landscapes. We refer to them as "defendants."

"[T]he defendant[s'] decision to [unilaterally terminate the contract] was hasty, ill advised, and prevented the plaintiff from completing the contract, had it been given the further opportunity to do so."

Defendants assign error to the court's denial of the motion to dismiss and to the entry of judgment for plaintiff. They contend that the contract is unenforceable, because it did not comply with the law governing landscape contracts. Under ORS 671.625,[2] a landscaping business may not enforce a contract unless it is in writing and complies with minimum standards adopted by the State Landscape Contractor's Board. A "landscaping business" is defined as "any business that offers the services of a landscape contractor for compensation." ORS 671.520(3). "Landscape contractor" is defined in ORS 671.520(2) as

"any person who engages for compensation in activities requiring the art, ability, experience, knowledge, science and skill to:

"(a)  Plan and install lawns, shrubs, vines, trees and other decorative vegetation including the grading and preparation of plots and areas of land and constructing fountains, drainage and irrigation systems for architectural horticulture, decorative treatment and arrangement;

"(b)  Plan and install fences, decks, walkways and retaining walls; or

"(c)  Do any part or any combination of any activity described in paragraphs (a) and (b) of this subsection."

Defendants contend that plaintiff offered the services of a landscape contractor as defined in ORS 671.520(2), because

---

[2] ORS 671.625 provides:

"(1) The board shall by rule adopt minimum standards for written contracts and billings of the landscaping businesses. The standards shall set forth requirements for information that must be contained in contracts and billings. The information required shall be any information the board determines is necessary to provide protection for consumers of the services and materials provided by landscaping businesses.

"(2) Work by a landscaping business subject to ORS 671.510 to 671.710 shall only be performed subject to a written contract. Any contract or billing for such work must conform to the standards adopted under subsection (1) of this section.

"(3) *A contract that does not substantially comply with this section may not be enforced by a landscaping business in any court or other proceedings within this state.*" (Emphasis supplied.)

its work involved "the grading and preparation of plots and areas."

The definition of a "landscape contractor" in ORS 671.520(2) is broad. A landscape contractor includes a person who has the skill to "[p]lan and install lawns, shrubs, vines, trees and other decorative vegetation including the grading and preparation of plots and areas of land" and *any* person who *does* "any part or any combination of" such activities. ORS 671.520(2)(a)(c). If that language is taken literally, any person who lifts a shovel of soil for compensation preparatory to planting decorative vegetation is a landscape contractor.

That broad a reading of ORS 671.520(2)(a)(c) contradicts ORS 671.625(1), which provides that minimum standards for landscape contracts were enacted "to provide protection for consumers of the services and materials provided by landscaping businesses." In applying a statute, legislative intent is to be pursued, if possible. ORS 174.020. It is clear that the legislature wanted to assure that landscape businesses use adequately written contracts when dealing with consumers. *Jehnings v. Allison,* 93 Or App 414, 762 P2d 1037 (1988). Senate Bill 562, which contained the first proposed landscape contractor law, was introduced in 1971 at the request of members of the landscaping profession who wanted regulation.

> "We have witnessed much misrepresentation to the public, both home owners and business concerns, by individuals claiming to be 'Landscapers.' * * * The public cannot be expected to know the necessary requirements for preparation of soil * * *. There is one way in which the home owner could be given assurance of qualified and competent workmanship * * *." Minutes, Senate Consumer Affairs Committee, Mar. 29, 1971, p 7 & App C, p 5 (statement of Ed Benedict, Landscape Gardeners Assn).

In 1977, the Sunset Review Committee reported to the legislature that regulation was needed, because landscaping is an inexpensive business to enter and

> "[p]roblems with the work performed are often not apparent to the consumer for several weeks or months after installation. By the time of discovery, the landscaper may have left the profession or the state.

"At the same time, it is difficult for the consumer to make an informed judgment regarding the competence of persons holding themselves out as landscape contractors." Minutes, House Committee on Legislative Oversight, June 5, 1979, Ex B, p 3 (State Landscape Contractors Advisory Board, Staff Sunset Review).

■    Defendants were not consumers when they contracted with plaintiff to move 11,000 yards of soil for the mall landscaping project. Defendants, themselves a landscaping business, merely engaged plaintiffs to do one preliminary step under their landscape contract with a consumer. We conclude that, under the facts, the subcontract was not a landscape contract to which the requirements of ORS 671.625 apply.

■    Defendants also argue that the contract was too vague and indefinite to be enforced. The trial court found that the parties had incorporated the details of the architect's plan into the contract and that it was sufficiently definite. We agree.

Affirmed.